## DANIEL BRICKETT *vs.* HAVERHILL AQUEDUCT COMPANY.

Essex. November 6, 1885. — September 8, 1886.

The St. of 1867, *c.* 73, authorizing an aqueduct corporation to take and use the waters of certain ponds to supply the inhabitants of a town with water by an aqueduct, and to enter upon and take any lands necessary for laying and maintaining aqueduct pipes or other works necessary for that purpose, and providing that "all damages sustained by entering upon and taking land, water, or water rights, for either or any of the above purposes, shall, in case of disagreement with the parties injured, be ascertained, determined, and recovered in the same manner as is now provided in cases where land is taken for highways," makes, in connection with the general laws, adequate provision for compensation, and is constitutional.

The St. of 1867, *c.* 73, in § 1, authorized an aqueduct company to take and use the waters of two ponds named, and of a certain lake. In § 5, it was provided that nothing in the act should be construed to authorize the company "to raise the water of any of said ponds above high-water mark, nor to drain any of them below low-water mark." *Held,* that the restriction applied to the lake as well as to the ponds.

If a statute authorizes an aqueduct corporation to take and use the waters of certain ponds to supply the inhabitants of a town with water, and to enter upon and take any lands necessary for maintaining its works for this purpose, and provides that damages sustained thereby may be recovered in the manner provided where land is taken for highways, and that nothing in the act shall authorize the corporation to raise the water of any of said ponds above high-water mark, nor to drain any of them below low-water mark, and the corporation, in proceeding under the statute, violates this last provision, and causes damage to a landowner, the latter may maintain an action of tort against the corporation therefor; and it is immaterial that the land so injured is situated in another State.

TORT for diverting and obstructing a watercourse, and thereby preventing water from flowing through the plaintiff's land. Trial in the Superior Court, before *Staples,* J., who ruled that the plaintiff could not maintain his action; ordered a verdict for the defendant; and, at the request of the parties, reported the case for the determination of this court. If the ruling was erroneous, the verdict was to be set aside and a new trial granted; otherwise, the verdict was to stand. The facts appear in the opinion.

*I. A. Abbott,* for the plaintiff.

*B. B. Jones,* for the defendant.

MORTON, C. J. It does not appear by this record when the defendant was incorporated. It has been in existence many years, and we presume it was organized under the St. of 1798, *c.* 59.

In 1867, the legislature recognized it as an existing corporation, and conferred upon it the power "to take and use the waters of Round Pond and Plug Pond, so called, and Kenoza Lake in the town of Haverhill, to supply the inhabitants of said town with water by an aqueduct, and to enter upon, take, and dig up any and all lands necessary for laying and maintaining aqueduct pipes, reservoirs, gates, dams, or other works, necessary for that purpose." St. 1867, *c.* 73.

Section 2 provides that "all damages sustained by entering upon and taking land, water, or water rights for either or any of the above purposes, shall, in case of disagreement with the

parties injured, be ascertained, determined, and recovered in the same manner as is now provided in cases where land is taken for highways."

Acting under this statute, the defendant took the waters of Kenoza Lake, which is a great pond situated in Haverhill, and, for the purpose of retaining the waters, built a dam across a small natural stream, not navigable, called Fishing River, which was the only outlet of the pond. The plaintiff owns land situated partly in Massachusetts and partly in New Hampshire, through which this stream flows. He contends that the effect of taking the water and building the dam is to diminish the flow of water through his land, and has brought this common law action of tort for this diversion of the water of the stream.

Without doubt, the defendant was liable to the plaintiff in some form of proceeding for any damage sustained by him by reason of taking the water and building the dam. *Watuppa Reservoir Co.* v. *Fall River*, 134 Mass. 267. But it is settled that, when the Legislature authorizes a municipal or other corporation to take private property for public uses, and provides in the statute a mode of ascertaining and recovering the damages, such statutory remedy is the only remedy to which the injured party can resort for acts done within the authority of the statute.

It follows that the plaintiff cannot maintain an action of tort for injuries caused to him by any acts of the defendant which it was authorized to do under the statute, but his only remedy is the one pointed out by the statute.

The plaintiff recognizes this principle; but contends that the St. of 1867 is unconstitutional and invalid, because it does not make adequate provision for the recovery of damages caused by the defendant's acts under it.

The Constitution provides that, "whenever the public exigencies require that the property of any individual should be appropriated to public uses, he shall receive a reasonable compensation therefor." Declaration of Rights, art. 10. Undoubtedly, a statute which attempts to authorize the appropriation of private property for public uses, without making adequate provision for compensation, is unconstitutional and void. *Connecticut River Railroad* v. *County Commissioners*, 127 Mass. 50,

and cases cited.   But the St. of 1867 does not undertake to do this.   It provides, in substance, that the corporation shall be liable to pay all damages for injury to private property, and specifies a sufficient remedy to enable the person injured to recover such damages.   We are not aware of any case in which it has been held that such provisions are not a sufficient compliance with the requirement of the Constitution.   The instances are numerous in which aqueduct companies have been incorporated by statutes which contain the same provisions for securing compensation.   The successive Legislatures, in these statutes, recognized the constitutional obligation to make adequate compensation, and deemed that such provisions did, with practical certainty, secure the rights of individuals whose property was taken or injured.

They undoubtedly took into consideration, not only the special remedy provided by each statute, but the other rights and remedies which an individual would have under the general laws, if his damages were not paid after they were ascertained.   Take the case before us.   If the plaintiff, or any person injured, had, upon proper application, had his damages ascertained, he would be entitled to a warrant of distress to compel the payment of them; Pub. Sts. *c.* 110, § 18; if this was ineffectual, and the defendant still refused to pay, without doubt this court would, by proceedings in equity, restrain the defendant from a further use of the water, and, if necessary, order the removal of the dam.

The question whether the provision for compensation furnished by the statute is an adequate one is a practical question. It seems to us that the remedy which the statute in question furnishes against the corporation, supplemented by the remedies afforded by the general laws, if it refuses to pay the damages assessed, affords to any person whose property is taken or injured by the acts of the corporation a reasonable certainty that he will recover and receive compensation therefor.   We are not, therefore, prepared to hold that the statute is unconstitutional, because it does not make adequate provision for compensation.

The case of *Connecticut River Railroad* v. *County Commissioners, ubi supra,* is quite different from the case at bar.   In that case, in the statute which was held to be unconstitutional,

no person or corporation, neither the State nor the manager of the railroad, was made liable for the damages, but the plaintiff was left to look solely to a future uncertain fund, and he was provided with no means of enforcing his claim against the fund.

We do not deem it important that the land of the plaintiff which was injured was outside of the limits of this State. The language of the act is general, and puts all water rights upon the same footing, and applies to a proprietor outside the State. Such proprietor certainly has no greater rights than the citizen whose lands or water rights within the State are injured by the acts of the defendant under the authority of the Legislature. Whether the constitutional objection we have considered would be open to a citizen of another State, whose lands or water rights in that State are injured, we need not discuss nor decide.

It follows that the plaintiff cannot maintain this action for damages caused by any acts of the defendant which are authorized by the statute.

But these considerations do not dispose of the whole case. The defendant is liable in an action of tort, if it has exceeded the powers given it by the statute, and if, by any acts beyond its authority, it has damaged the plaintiff.

Section 5 of the statute provides that nothing in the act shall authorize the defendant " to raise the water of any of said ponds above high-water mark, nor to drain any of them below low-water mark." We have no doubt that this provision was intended to include the pond called Kenoza Lake, as well as the other two ponds named in the first section.

There was evidence that the defendant had built its dam and raised the water above high-water mark, and that it had at times drawn off the water below low-water mark. By thus doing, it exceeded its powers, and, if the plaintiff has sustained any damage by such unlawful acts, he can maintain this action. If the effect of raising the dam and the pond above high-water mark, or of lowering it below low-water mark, was to hold back the water and prevent it for a time from running in the stream as it would have done if the defendant had not committed the unlawful acts, the plaintiff can recover damages therefor, if any appreciable damage was thus caused him. There was evidence tending to show that, in July, 1882, the water ceased to flow in

the stream, and that the pond was then about eleven inches above the top of the opening in a culvert which was testified to as high-water mark, thus tending to show that, if the dam had been built so as to retain the water at high-water mark, the stream would have been supplied with some water.

We are of opinion that the evidence should have been submitted to the jury; and that they should have been instructed to give the plaintiff a verdict for such damages only as he proved were caused by the unlawful acts of the defendant in exceeding the powers conferred by the statute.          *New trial granted.*