PINE et al. v. MAYOR, ETC., OF CITY OF NEW YORK.

(Circuit Court of Appeals, Second Circuit.   October 30, 1901.)

No. 138.

1. WATERS—APPROPRIATION UNDER POWER OF EMINENT DOMAIN—INJURY TO RIPARIAN OWNERS IN ANOTHER STATE.

A state cannot, in the exercise of its power of eminent domain, authorize one of its municipalities to divert the waters of a nonnavigable interstate stream, to the injury of riparian owners on such stream in another state. The right of such owners to the use of the water flowing in its natural channel is not an easement dependent upon servitudes upon lands above, in the other state, which such state may extinguish on making constitutional compensation, but is inseparably annexed to the soil, and is parcel of the land itself; and the diversion of the water in the state above is a taking of property outside the limits of the state, and beyond its jurisdiction.

2. SAME—REMEDY FOR UNLAWFUL DIVERSION—INJUNCTION.

Where a city in New York, acting under authority of a state statute, is proceeding to divert the waters of a nonnavigable stream in that state for municipal purposes, to the injury of riparian owners below, whose lands are situated in Connecticut, such owners are not confined to the remedy given by the New York statute to obtain compensation for the injury; but, the act being a tortious taking of their property in Connecticut without authority of law, they may maintain a suit in equity to enjoin the same.

Wheeler, District Judge, dissenting.

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 103 Fed. 337.

George L. Stirling, for appellants.

Charles C. Marshall, for appellees.

Before WALLACE, Circuit Judge, and WHEELER and THOMAS, District Judges.

THOMAS, District Judge. The first question is whether the state of New York, in the exercise of its power of eminent domain, can enable the defendant, the city of New York, to erect within the limits of that state a dam across an unnavigable river having its source in ponds in the state of New York, and divert the water thereby accumulated to a great distance, for general distribution and use in the city of New York, and, by thus materially diminishing the flowage, substantially injure riparian rights in the state of Connecticut pertaining to a stream to which the river in New York is the principal tributary. The second question is whether a statute of New York purporting to enable the city of New York to do the act above stated, and providing a remedy where-

by the riparian owner in Connecticut may obtain compensation for the injury, furnishes a proper remedy, or should the present suit to enjoin the defendant as a wrongdoer be sustained?

Without reference to authorities, certain applicable legal rules may be accepted, viz.: (1) The defendant is not a riparian owner, and is not exercising the usual rights of riparian owners; (2) even if the defendant had acquired all the riparian rights save those of the complainants, the diversion is not thereby justified; (3) the state of New York cannot authorize the taking of property in Connecticut; (4) the diversion of the water is not an act which a court of equity could approve or regulate under a power to apportion or adjust the use of the water among riparian owners; (5) the usual powers of the state of New York respecting navigable rivers within its borders do not extend to unnavigable interstate streams; (6) the diversion is a tortious act initiated in New York, and, as to the complainants, taking effect in Connecticut, for which the present suit should lie; (7) the diversion of water at one point is a taking of the property of riparian owners below the point of diversion, and falls within the constitutional protection; (8) the right of the complainants to use the water as it is wont to flow is not an easement, but an incident to, and inseparably connected with, their land; (9) a court of equity, asked to enjoin the taking of property, where such taking is not authorized, and is therefore tortious, will not make its decree for an injunction conditional upon the ascertainment of the value of the property taken, and payment to the complainants, unless there be present facts which should equitably estop the complainants, and limit them to such relief. The foregoing propositions are based largely upon principles of the common law, and supported uniformly in all jurisdictions where as to this subject the common law prevails, as it does in the states of New York and Connecticut, unless certain decisions in Massachusetts be exceptions. The contention is understood to be that the latter decisions are authority for two propositions: (1) That the complainants' property rights taken by defendant are easements dependent upon servitudes upon land in the state of New York, which servitudes the state of New York may, under its own law, extinguish upon making constitutional compensation, and thereby enable the defendant to continue the diversion; (2) that the statutory provision for compensation is the only remedy to which the complainants may resort in the state of New York. The affirmance of the second proposition depends upon the establishment of the first. If the state of New York may extinguish the so-called servitudes in that state in the exercise of its power of eminent domain, and thereby separate the same from complainants' property in Connecticut, so as to satisfy the complainants' whole claim for compensation, it may, of course, limit those injured to any method otherwise constitutional for making compensation. But if the act of diversion is tortious, and is not relieved of such character by some power of the state to extinguish the alleged servitudes, and thereby satisfy the complainants' whole demand for compensation, then the **statute of New York, as a compulsory statute, is not binding upon**

the owners of riparian rights in Connecticut, and this court will not compel such owners to employ the statute for the purposes of redress. A state cannot enact a statute purporting to authorize property to be taken beyond its boundaries, and deny a remedy to a person wronged unless he resort to and thereby ratify the statute by securing his compensation pursuant to it. In such case the state seizes by wrong and without constitutional right under the color of statute, and insists that the offended person shall waive the tort, and declare the tortious act a valid act, by seeking his remedy under the very statute which as to him is void and ineffective. The wrongdoer thus by sheer might commits an actionable wrong, and shields itself from answering therefor, unless pursuant to the statutory command by which the wrong was ordered done.

What are the decisions in Massachusetts? The court is referred to Brickett v. Aqueduct Co., 142 Mass. 394, 8 N. E. 119; Banigan v. City of Worcester (C. C.) 30 Fed. 392; Mannville Co. v. Same, 138 Mass. 89, 52 Am. Rep. 261. In the Brickett Case the plaintiff, whose citizenship is not stated, owned land situated partly in Massachusetts and partly in New Hampshire. He brought an action for tort, based upon the claim that the defendant, acting under an enabling statute of Massachusetts, had diminished the flow of water through his land, and asked to recover his damages in such action. In other words, he sought to recover the value of the property taken, in a court of the jurisdiction where the tortious act was initiated. The legislature had provided a particular statutory remedy for ascertaining such injury and consequent damages, and relegated the plaintiff to procedure under such statute, and, in effect, held that, when the proprietor of property outside of the state sought pecuniary redress in the state, he must pursue the new remedy that the state had provided for the particular class of injuries within which his own injury fell. The plaintiff objected that this statute was unconstitutional, not because it could have no extraterritorial operation, but "because it does not make adequate provision for the recovery of damages caused by the defendant's acts under it." The court held that the statute was not open to such objection. That was the sole question in issue, and in determining such issue it was stated that it was not important that the land of the plaintiff which was injured was without the limits of the state. The plaintiff sought damages for a tort in the jurisdiction of the tort feasor. He did not ask for relief against the continuance of the tortious act. His action for damages was an affirmation of the taking, and he was constrained to resort to the same remedy that was obligatory upon those who sought similar relief. There is no occasion for criticising this holding. It was a mere application of a familiar rule,—that a new remedy for ascertaining damages, found ample to meet the constitutional requirement, supersedes the usual common-law action. In Banigan v. City of Worcester, supra, it appears that, pursuant to an enabling act of Massachusetts, the defendant had diverted from a stream in that state water which would have flowed, in its natural course, through plaintiff's land, in Rhode Island. The injured

owner came into the superior court of Massachusetts, and petitioned that his damages might be assessed under the statute from which the defendant derived such authority as it had to make the diversion, and thereafter removed the case to the United States circuit court for the district of Massachusetts. The defendant moved to remand the case to the court of the state, and also filed a demurrer to the petition. It was considered that the right of removal existed, and that the petitioner might avail himself of the statute. It is difficult to conceive of other suitable holding. But in his opinion Judge Carpenter says:

"On the demurrer the defendant alleges that the petitions show no cause for relief under the statute. The argument is that since the lands of the petitioners are in Rhode Island, and their rights in the water of Tatnuck brook are appurtenant to those lands, the petitioners cannot claim a remedy under this statute unless it be held to have extraterritorial effect, which, of course, is inadmissible. I cannot agree with this argument. It has been held by the supreme court of Massachusetts that the owner of land in an adjoining state may have, as appurtenant to such land, an interest in land or water in Massachusetts, which may be protected by suit in the courts of that state. Mannville Co. v. City of Worcester, 138 Mass. 89, 52 Am. Rep. 261. I am strongly inclined to the opinion that the decision in that case is of binding force on this court in the case at bar; and, even if it be not so, I am inclined to follow that case, as being of high authority, and well supported by the reasoning of the opinion."

It will be observed that the learned judge does not state that all of the plaintiff's property rights taken are in the state of Massachusetts, so that they may be taken in invitum under the power of eminent domain possessed by that state, but that they have an interest in land or water in Massachusetts, which may be protected by suit in courts of that state. The particular redress sought in the Banigan Case was full compensation, and the property owner elected to obtain such redress in a statutory proceeding which had been provided by the state. This is far from holding that such statute was compulsory, and that, if the foreign owner choose to assert that his property in Rhode Island could not be taken under the statute, relief enjoining the continuance of the diversion would be denied. This brings the inquiry to the facts and holding in Mannville Co. v. City of Worcester, to which Judge Carpenter referred in the language quoted,—quite unnecessarily, as it seems, for the purposes of his decision. The action was for tort in diverting the waters of a natural stream in Massachusetts, and preventing the same from coming to the plaintiff's mill, in the state of Rhode Island. The plaintiff was the owner of a mill in Rhode Island upon the Blackstone river. The defendant had withdrawn, in Massachusetts, enough of the waters of Tatnuck brook, a tributary of that river, materially to affect the operation of the mill. In the opinion it is stated:

"The main question argued before us is raised by the refusal of a ruling requested by the defendant,—that 'the diversion of the waters of a natural stream in this state, and preventing the same from coming to the plaintiff's mill, situated in Rhode Island, is not a tort for which the plaintiff can recover in the courts of this commonwealth.' The defendant's counsel contended in the first place that such rights as the plaintiff claims cannot extend beyond the Rhode Island line, and went the length of maintaining that a servitude

cannot be created in one state in favor of lands in another. We are unable to agree to this proposition, upon either principle or authority. Every decision and dictum that we have found bearing on the precise point is the other way. [Citing cases.] We think that the cases which recognize civil and even criminal liability for flowing land in one state by means of a dam in another are hardly less pertinent. [Citing cases.] The defendant admits these cases to be law, and tries to distinguish them. But we cannot assent to the distinction between discharging and withdrawing water. The consequence in one case is positive, in the other, negative; but in each it is the consequence of an act done outside the jurisdiction where the harm occurs, and the consequence is as direct in the latter case as in the former. The right infringed in the former case is called 'absolute ownership'; in the latter, 'easement'; but the laws of Rhode Island, which make a man owner of a tract of land there, have no more power to diminish freedom of action in Massachusetts than any other of its laws. A concurrence of the laws of both states is as necessary in that case as in the one at bar to create a liability which can be enforced in either state consistently with principle. Such a concurrence presents no technical difficulties, and, if the substantive end to be attained is a proper one, it will be recognized and acted on here; and we have no doubt that it would be in Rhode Island, if the position of the parties were reversed."

Thus far it appears that the action was for tort, that the court held that there was a cause of action for tort, that the tortious act was done in the state of Massachusetts, that the injury was done in Rhode Island, and that a concurrence of the laws of both states was necessary to create a liability which could be enforced in either state consistently with principle. This last statement accords with the usual holding,—that a tortious act doing injury in one jurisdiction will not be enforced in another unless there is a cause of action in both jurisdictions. To this point there is no statement that is not in harmony with general law. But the opinion continues:

"Of course, the laws of Rhode Island cannot subject Massachusetts land to a servitude, and, apart from any constitutional considerations, if there are any, which we do not mean to intimate, Massachusetts might prohibit the creation of such servitudes. So it might authorize any acts to be done within its limits, however injurious to lands or persons outside them. But it does not do either. It has no more objection to a citizen of Rhode Island owning an easement, as incident to his ownership of land in that state, than it has to his owning it in gross, or to his purchasing lands here in fee. Questions might be conceived as to the transfer of such easements, but they do not arise here. Slack v. Walcott, 3 Mason, 508, 516, Fed. Cas. No. 12,932. So far as their creation is concerned, the law of Massachusetts governs, whether the mode of creation be by deed or prescription, or whether the right be one which is regarded as naturally arising out of the relation between the two estates. Being created, the law of Rhode Island, by permission of that of Massachusetts, lays hold of them, and attaches them in such way as it sees fit to land there; Massachusetts being secured against anything contrary to its views of policy by the common traditions of the two states, and by the power over its own territory which it holds in reserve."

The portion of the opinion last quoted holds (1) that Rhode Island cannot subject to a servitude land in Massachusetts; (2) that Massachusetts might prohibit the creation of such servitudes, and, so far as their creation is concerned, the law of Massachusetts governs; (3) that after their creation the law of Rhode Island, by the permission of that of Massachusetts, attaches easements as it sees fit to the land in Rhode Island; (4) that Massachusetts might

authorize any acts to be done within its limits, however injurious to lands or persons outside of them. Two of the holdings above enumerated may be considered,—that the property right of the riparian owner involves an easement to which land in the state of Massachusetts is subject by way of servitude; that the state of Massachusetts might authorize any acts to be done within its limits, however injurious to lands or persons outside of them. Relating these holdings to the case at bar, it should be observed that the property right of the owners in Connecticut has not been regarded as involving an easement. It is true that rights respecting the use of a stream, whereby the land of other riparian owners is burdened, may be acquired by grant or prescription. Such is the right to diminish the flowage to lower proprietors from the quantity originally due them; the right to corrupt the quality of the water, or to set it back upon the lands of other proprietors. The rights thus obtained are easements, but primarily riparian proprietors are entitled to the natural flow of water, that they may use the same as incident to the land bordering on the stream, and owned by them. The water course begins ex jute naturæ, and, having taken a course naturally, all riparian owners own a use thereof, as it flows and should flow the land owned by them. 3 Kent, Comm. pp. 439, 442: "Every proprietor of lands on the banks of a river has naturally an equal right to the use of the water which flows in the stream adjacent to his lands, as it was wont to run (currere solebat), without diminution or alteration." Id. p. 439. But easements are acquired by grant, express or implied, or prescription. Wolfe v. Frost, 4 Sandf. Ch. 72; 2 Washb. Real Prop. (5th Ed.) p. 315. The right of a riparian owner that a stream shall flow naturally in its channel is not acquired either by grant or prescription. Servitudes are artificial creations. Nature imposed the servitudes upon the banks of a stream, that it should be subject to the flow of water. Mr. Washburne (Id. p. 366) says:

"Property in water, in connection with real estate, can only be predicated of its use, which serves by its enjoyment to give value to the corporeal hereditaments with which its use is applied. Thus the riparian proprietor of land bordering upon a running stream has a right to the benefit to be derived from the flow of water thereof, as a natural incident to his estate, and no one may lawfully divert the same against his consent. Nor can this right be considered as an easement, since it belongs to the estate of the landowner, through which the water flows, as forming one of the elements of which this estate is composed."

A writer of recognized authority upon this subject states:

"The right to the use of the water in its natural flow is not a mere easement or appurtenance, but is inseparably annexed to the soil itself. It does not depend upon appropriation or presumed grant from long acquiescence on the part of other riparian proprietors above and below, but exists jure naturæ as parcel of the land." Gould, Waters, p. 395.

Such is the general view of the nature of the rights of riparian owners. St. Louis Min. & Mill. Co. v. Montana Min. Co. (C. C.) 58 Fed. 129, 137; Scriver v. Smith, 100 N. Y. 471, 3 N. E. 675, 53 Am. Rep. 224. The case last cited amply discusses the subject, and precludes necessity of reference to similar holdings in numer-

ous authorities. Therefore, without further examination, the conclusion may be stated that the complainants have no easements related to property within the state of New York, which that state may take in the exercise of its power of eminent domain. This leaves unconsidered the statement in Mannville Co. v. City of Worcester to the effect that the state of Massachusetts "might authorize any acts to be done within its limits, however injurious to lands or persons outside of them." Does this mean that the legislature of the state of Massachusetts may authorize a tortious act to be done within the limits of that state, to take effect upon property without the state? The statement should not be isolated and given such construction. Rather it is to be inferred that it relates to and is based upon the view that the proprietor in Rhode Island owned an easement or privilege in land in Massachusetts, of which the latter state had jurisdiction. But it is considered that such estimate of the nature of the property rights of riparian owners is not that usually adopted. Whatever may have been said arguendo in the opinion in Mannville Co. v. City of Worcester it is obvious that there is no holding in the courts of Massachusetts or other jurisdiction that the legislature of one state may authorize one of its municipalities to take, in the exercise of its power of eminent domain, property situated without the state, be it property of a riparian owner in a foreign state, or otherwise. On the other hand, the decision of Judge Shipman in the case at bar follows his conclusion in Holyoke Water Power Co. v. Connecticut River Co., 52 Conn. 570, 22 Blatchf. 131, 20 Fed. 71, which has not been modified by subsequent decisions, and finds direct support in Rutz v. City of St. Louis (C. C.) 7 Fed. 438; opinion of attorney general of Pennsylvania, 4 Am. Law Reg. 385; the discussion of Judge Story in Slack v. Walcott, 3 Mason, 517, Fed. Cas. No. 12,932, of Judge Woodruff, in Re Townsend, 39 N. Y. 179; and the article upon "The Power of a State to Divert an Interstate River," 8 Harv. Law Rev. 138. Judge Story succinctly states the nature and location of rights similar to those involved in the suit at bar in Slack v. Walcott. The plaintiffs were citizens of, and owners of a mill in, the state of Massachusetts, on the east side of Pawtucket river; and the defendants were citizens of, and owners of a mill in, Rhode Island, on the west side of the same river; the river forming the boundary between the two states. The bill was brought in the circuit court of the United States for the district of Rhode Island to establish the title of the plaintiffs to a prior use of the water for the purpose of supplying their mill, and alleged an obstruction of the accustomed course of the water through their mill by the defendants, by withdrawing it to the use of the defendants, on the Rhode Island side of the river, and prayed for an injunction. One of the plaintiffs died, having devised his interest in the mill to one Walcott. Upon due probate of the will in the state of Massachusetts, the devisee and the other plaintiffs brought a bill to revive the suit without making the heirs at law of the testator parties; and, in considering whether the devisee was entitled to revive the suit, Judge Story stated as follows:

"I am not prepared, however, to accede to the argument of the defendant's counsel that the will in this case is not admissible in evidence until after probate in the state of Rhode Island. It does not strike me that any such probate for the purposes of this suit is necessary. The mill in controversy is situated in Massachusetts. The river, the use of whose waters is claimed as appurtenant to the mill, is the boundary of the two states, and the waters therefore partly flow in each state. The right, however, is not a distinct right to the water, as terra aqua cooperta, or as a distinct corporeal hereditament, but as an incident to the mill and attached to the realty. It passes by grant of the mill, and has no independent existence. It is not real estate situated in Rhode Island. It is an incorporeal hereditament annexed to a freehold in Massachusetts. And a conveyance of the mill, good by the laws of the state where the mill is situated, conveys all the appurtenances. The wrong done by stopping the flow of the water by any obstruction or drain in Rhode Island is an injury done to the mill itself in Massachusetts. In a just sense the wrong may be said to be done in both states, like the analogous case of an injury to land lying in one county by an act done in another county."

The judgment should be affirmed, with costs.

WHEELER, District Judge (dissenting). The defendant has done nothing in question here outside of the state of New York; the deprivation of water complained of was wholly within that state; and, if the plaintiffs have any rights in the water taken, they exist within that state, and were subject to and taken under the eminent domain of that state. The plaintiffs have come into this court because they are citizens of another state, and not because their land through which they derive their rights to the water taken is situated in another state. Mr. Justice Gray, in Head v. Manufacturing Co., 113 U. S. 9, 5 Sup. Ct. 441, 28 L. Ed. 889, said at page 23, 113 U. S., page 447, 5 Sup. Ct., and page 894, 28 L. Ed.:

"The right to the use of running water is publici juris, and common to all the proprietors of the bed and banks of the stream from its source to its outlet."

Thus these parties have a common interest in the water in question, which the defendant has taken under the law of the state, and not as a trespasser. It seems to be familiar law that, when an injunction is applied for to restrain such a taking, the damages will be ascertained, and the injunction withheld on making payment. In that case Mr. Justice Gray further said at page 21, 113 U. S., page 446, 5 Sup. Ct., and page 894, 28 L. Ed.:

"When property in which several persons have a common interest cannot be fully and beneficially enjoyed in its existing condition, the law often provides a way in which they may compel one another to submit to measures necessary to secure its beneficial enjoyment, making equitable compensation to any whose control of or interest in the property is thereby modified."

The plaintiffs' rights do not depend at all upon state lines, and are not any different from what they would be if their lands were within the state of New York, and the damages can as well be ascertained as if the jurisdiction of that state extended over them. In Brickett v. Aqueduct Co., 142 Mass. 394, 8 N. E. 119, Mr. Chief Justice Morton, in speaking of the eminent domain of Massachusetts over water flowing into New Hampshire, said:

"We do not deem it important that the land of the plaintiff which was injured was outside of the limits of this state."

As the plaintiffs have come into this court within the state where the taking complained of, which is not a trespass, was done, for relief, they are entitled to, and should have, such relief as is usually afforded in such cases. I think the damages should be ascertained, and the injunction withheld for an opportunity to pay them.