## DE LUCCA v. CITY OF NORTH LITTLE ROCK et al.

(Circuit Court, E. D. Arkansas, W. D.    December 30, 1905.)

**1. EMINENT DOMAIN—INJUNCTION—CONSTRUCTING VIADUCT ON STREET.**

Const. Ark. art. 2, § 22, which provides that "private property shall not be taken, appropriated, or damaged for public use without just compensation therefor," and article 12, § 9, providing that no property nor right of way shall be appropriated to the use of any corporation until full compensation therefor shall be first made to the owner in money, or first secured to him by a deposit of money, does not entitle a lot owner to an injunction to restrain a city from building a viaduct on the street in front of his lot unless compensation shall have been paid him, where his property is not taken nor invaded, but will be damaged incidentally by the structure; an action at law being an adequate remedy if complainant is entitled to relief.

2. SAME—RIGHT TO COMPENSATION.

Under the law of Arkansas the fee of streets is in the abutting owners, the public having merely an easement for all proper purposes of travel, but the construction of a viaduct by a city on a main street over railroad tracks to protect the public from danger of grade crossings does not, under the state decisions, impose an additional servitude on the freehold so as to amount to a taking or invasion of the property of a lot owner, being within the scope of the easement for which the street is dedicated, and within the statutory powers of cities to exercise care, supervision, and control over their streets.

3. RAILROADS—IMPROVEMENT OF CROSSINGS—ARKANSAS STATUTE.

Act Ark. Feb. 14, 1905 (Acts Ark. 1905, p. 116), which requires all railroad companies to grade the crossings of highways and streets over their tracks, "provided at any crossing of any public highway or street in any incorporated city or town, such railroad may be crossed by a good and safe bridge to be built and maintained in good repair by the railroad company," is not mandatory with respect to such bridges, but permissive only, leaving it optional with a railroad company whether to grade or bridge a crossing.

4. MUNICIPAL CORPORATIONS—IMPROVEMENT OF STREETS—RIGHTS OF PROPERTY OWNER.

Where, at the time a complainant acquired property in a city, the laws of the state gave the city the power to make street improvements by which his property might be damaged, he took the property subject to such conditions, and is limited to the remedies provided by the state law.

In Equity. On demurrer to bill.

The complainant, who is a citizen of the state of California, seeks by this bill to enjoin the city of North Little Rock, a municipal corporation existing under the laws of the state of Arkansas, from constructing a viaduct along and upon Newton avenue or Main street of said city, for the construction of which it had entered into a contract with its codefendant. It is charged that, at the time of the passage of the ordinance of the city authorizing the construction of this viaduct and before the incorporation of said city, the St. Louis Iron Mountain & Southern Railway Company maintained railroad tracks across the highway now known as Newton avenue and latterly as Main street in said city; that said railway company maintains guards and flagmen at said crossing without cost to said city, so that the lives and property of the public may be and are properly protected at such point; that the viaduct as planned by said city is intended to occupy the entire roadway of said Newton avenue from Eighth to Twelfth street in said city, a distance of about 1.342 feet, with approaches at a 6 per cent. grade to the highest point, so that its height over the railroad tracks shall be 22 feet; that it is to be constructed upon steel columns or piers, and is to have two tracks parallel with each other for street car purposes; that, in addition to the said tracks, there is to be a roadway for teams and wagons, and walks for pedestrians; that complainant is and has been for a long time the owner of a block of ground immediately north of the said railroad and on the east side of said Newton avenue, running north along and abutting upon said avenue for a distance of 160 feet, and running back parallel with the said right of way a distance of 190 feet, making in all 71-100 of an acre; that said block contains a building fronting upon said Newton avenue, and that the construction of the viaduct will take away the light which otherwise flows to said premises, and will greatly, if not entirely, obstruct access thereto and will produce a constant discharge of dirt and offal from passing teams, not to mention the expectoration and dirt from passing pedestrians, so that the value of said premises will be taken away and be rendered practically valueless, or nearly so; that the said point, and for the entire distance from his said premises south to the river, the said Newton avenue is, and for many years has been, the principal business street in said city; that complainant's premises are used for business purposes and are chiefly valuable for said purposes; that the effect of the construction of said viaduct will be to take away the desirability of his property for

business purposes and will operate as a taking of his property; that at no time has the said city offered to pay or provide a method of payment for compensating the complainant for the taking and damaging his said property, nor has it provided any mode of compensation for any other property damaged by said viaduct, although the value thereof will, as he is informed and avers, exceed $50,000; that the complainant will sustain a loss of over $10,000, if the said viaduct is constructed as planned; that the said action of the city is in contravention of the fourteenth amendment to the Constitution of the United States, as well as against the provisions of article 1, § 10, of the said Constitution; that the fee in the said street is in the abutting property owners; that the city has but an easement therein, and was and is bound, by contract with the owners of the property upon said street, to keep the same open and in all respects free from obstructions which may impair the use and value of said street, or any part thereof, and the property upon the same; that the said action of said city is in contravention of article 2, § 22, and article 12, § 9, of the Constitution of the state of Arkansas, which provide that compensation shall be made for property taken or damaged before the same can be so taken or damaged; and that the attempt of the city to construct a viaduct for street car purposes is without warrant of law. It is also charged that the city of North Little Rock was organized on the 21st day of July, 1903; that its income from general revenue for the year ending July 1, 1905, did not equal $12,000; that its monthy receipts from other sources do not average over $2,500; that its revenues have been anticipated and covered by the monthly expenses and other outlays and contracts; and that at present it has outstanding and unpaid many city warrants amounting to several thousand dollars. The defendant city demurs to the sufficiency of the complaint upon the ground that there is no equity in it, and that, if complainant is entitled to any relief, he can obtain complete and adequate relief at law.

Morris M. Cohn, John Fletcher, and Gray & Gracie, for complainants.

James P. Clarke, for defendant city.

TRIEBER, District Judge (after stating the facts). As there is a diversity of citizenship, the jurisdiction of this court may be maintained upon that ground without determining whether the complainant is, by the action of the city, deprived of any right guarantied to him by the Constitution of the United States which would authorize him, if there were no diversity of citizenship, to invoke the jurisdiction of this court.

The Constitution of the state of Arkansas provides in the Bill of Rights, article 2, § 22:

"The right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use, without just compensation therefor."

Article 12, § 9, provides:

"No property, nor right of way, shall be appropriated to the use of any corporation until full compensation therefor shall be first made to the owner, in money, or first secured to him by a deposit of money, which compensation, irrespective of any benefit from any improvement proposed by such corporation, shall be ascertained by a jury of twelve men, in a court of competent jurisdiction, as shall be prescribed by law."

On the part of complainant, it is contended that under these provisions of the Constitution, before any corporation, whether it be public or private, can do any act whereby the property of a private citizen is damaged, there must be full compensation made therefor to the owner or first secured to him by a deposit of money, and as the build-

ing of this viaduct will result in serious damage to the property of the complainant, and no compensation having been paid to him therefor or secured by a deposit of money, the building of the viaduct would deprive him of a right guarantied to him by the constitution of the state. On the other hand, it is contended on behalf of the defendant city that, as article 2, § 22, which provides for compensation for damage to property, contains no such provision, and the further fact that the General Assembly of the state has made no provision for any proceedings whereby damages resulting to property by reason of the erection of a viaduct or the use of the streets, when no property of the complainant is actually taken or invaded, may be assessed before the street is used, it is not necessary, nor, in fact, is it possible, for a city to make such compensation or institute proceedings whereby the money could be deposited for the payment of such damages as the owner of the property may sustain, and that the provision of the Constitution which requires such compensation or deposit of money applies only to the taking of property, and not to damage thereto. It is the settled law of the state of Arkansas that the fee to the streets is not in the city, but in the abutting owner. · Reichert v. St. Louis & S. F. Ry. Co., 51 Ark. 491, 11 S. W. 696, 5 L. R. A. 183. In the absence of a constitutional provision of the state that private property shall not be damaged for public use without just compensation therefor, the well-settled rule is that the owner of property which has not been invaded, nor any part thereof taken, cannot recover for any damages incidentally arising from the use of the public highway. Transportation Co. v. Chicago, 99 U. S. 635, 25 L. Ed. 336; Osborne v. Missouri Pacific Ry. Co., 147 U. S. 248, 13 Sup. Ct. 299, 37 L. Ed. 155.

Learned counsel have cited a large number of cases to sustain their respective contentions. A case upon which counsel for complainant have laid great stress is McElroy v. Kansas City (C. C.) 21 Fed. 257, decided by Mr. Justice Brewer, at that time circuit judge, and which has been cited with approval and followed by the Supreme Court of the United States in several cases, as well as by many other courts of last resort. But the constitutional provision of the state of Missouri, in which state the case arose, is quite different from that found on the Constitution of the state of Arkansas. The Missouri Constitution provides:

"That private property shall not be taken or damaged for public use without just compensation. Such compensation to be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law; and until the same shall be paid to the owner the property shall not be disturbed nor the proprietary rights of the owner therein be divested."

Judge Brewer, in determining the principles of law applicable to cases of that kind, says:

"When the defendant has an ultimate right to do the act sought to be restrained, but only upon some condition precedent, and compliance with the condition is within the power of the defendant, injunction will almost universally be granted until the condition is complied with."

In Donovan v. Allert, 11 N. D. 289, 91 N. W. 441, 58 L. R. A. 775, 95 Am. St. Rep. 720, the same conclusion was reached as in the Mc-

Elroy Case; the Constitution of that state containing almost the identical provision found in that of Missouri, that private property shall not be taken or damaged for public use without just compensation having been first made to, or paid into court for the use of, the owner. In Vanderlip v. City of Grand Rapids, 73 Mich. 522, 41 N. W. 677, 3 L. R. A. 247, 16 Am. St. Rep. 597, the act enjoined was the raising of a grade of a street, which would result in filling, not only the street, but complainant's lot to a depth of 30 feet in some places, and burying a portion of her dwelling. This, the court held, was an invasion of her property amounting to a taking thereof, and it was the duty of the court to enjoin the city from doing so until compensation had been made to the owner. City of Pueblo v. Strait, 20 Colo. 13, 36 Pac. 789, 24 L. R. A. 392, 46 Am. St., Rep. 273, and N. Y. Elevated R. R. Co. v. Fifth National Bank, 135 U. S. 432, 10 Sup. Ct. 743, 34 L. Ed. 231, were both actions at law to recover damages, and not proceedings in equity to enjoin the defendants. In St. Louis & San Francisco R. R. Co. v. Southwestern Telegraph & Telephone Co., 121 Fed. 276, 58 C. C. A. 198, the injunction was granted upon the sole ground that the defendant was not incorporated, and for this reason had no right to maintain a suit of condemnation. Hot Springs R. R. Co. v. Williamson, 45 Ark. 429, and Reichert v. Railroad Company, 51 Ark. 491, 11 S. W. 696, 5 L. R. A. 183, were both actions at law to recover damages, and not suits for injunction. In Texarkana v. Leach, 66 Ark. 40, 48 S. W. 807, 74 Am. St. Rep. 68, the injunction was granted solely upon the ground that the city had no power, under the laws of the state, to close a street. Pine v. New York City (C. C.) 103 Fed. 337, affirmed in 112 Fed. 98, 50 C. C. A. 145, has no application to the case at bar, and in view of the fact that these decisions were reversed by the Supreme Court in 185 U. S. 93, 22 Sup. Ct. 592, 46 L. Ed. 820, they can hardly be treated as authorities. In Doane v. Lake Street Elevated R. R. Co., 165 Ill. 510, 46 N. E. 520, 36 L. R. A. 97, 56 Am. St. Rep. 265, under constitutional provisions identical with those of the state of Arkansas, it was held that an owner of abutting property whose property is not taken, but only damaged incidentally, cannot maintain a bill to enjoin until the resulting damages to his property are ascertained and paid, but that his remedy is by action at law for such damages, quoting with approval from Osborne v. Missouri Pacific R. R. Co., 147 U. S. 259, 13 Sup. Ct. 303, 37 L. Ed. 155:

"But where there is no direct taking of the estate itself, in whole or in part, the injury complained of is the infliction of damage in respect to the complete enjoyment thereof, a court of equity must be satisfied that the threatened damage is substantial and the remedy at law in fact inadequate before restraint will be laid upon the progress of a public work. And if the case made discloses only a legal right to recover damages rather than to demand compensation, the court will decline to interfere."

In the case at bar the viaduct which it is sought to enjoin is to be built by the city for the protection of the public, and not merely by a private corporation for private gain, although for public use, as was the case in the Doane Case. In Blodgett v. Northwestern

Elevated R. R. Co., 80 Fed. 601, 26 C. C. A. 21, the United States Circuit Court of Appeals follows the decision in the Doane Case.

In the late case of Manigault v. Springs, 199 U. S. 473, 26 Sup. Ct. 127, 50 L. Ed. —— decided by the Supreme Court of the United States on December 4, 1905, where it was sought to enjoin parties from damming or otherwise obstructing a creek in the county of Johnstown, S. C., upon the ground that the erection of such a dam would result in serious injury to complainant's property and there had been no compensation to him, and the further ground that an agreement between the parties entered into in 1903 created an easement of access to plaintiff's land, which the statute of South Carolina authorizing the building of the dam impaired, the Supreme Court said:

"It is suggested that the agreement of 1903 created an easement of access to plaintiff's land, and that the statute of South Carolina must be construed as overriding private rights of property, and .not merely as putting an end to the rights of the public and as giving to plaintiff a claim for damages for the taking of that easement. But it does not necessarily follow that an injunction should issue. Apparently this covenant did not apply to the mill site, since this was purchased after the covenant was made; but, however this may be, a court of equity is not bound to enjoin a public work authorized by statute, until compensation is paid, where no property is directly appropriated. This is particularly true where the damage is difficult of ascertainment at the time and a reasonable provision is made by the law for compensation.

Does the fact that the ownership of the fee of a street is, under the laws of Arkansas, in the abutting owner, while in Illinois it is in the city, make the Illinois decisions inapplicable to causes of action arising in this state? As the decisions of the highest court of a state on a question of this nature are conclusive on the national courts (Blodgett v. Northwestern Elevated R. R. Co., 80 Fed. 601, 26 C. C. A. 21), it is important to examine the decisions of the Supreme Court of this state to ascertain the conclusions reached by that Court on this subject.

The only case having any direct bearing and on which counsel for complainant rely is Reichert v. Railway Co., 51 Ark. 491, 11 S. W. 696, 5 L. R. A. 183. In that case, which was an action of ejectment for the street, the court, in a well-considered opinion, in which the authorities bearing on that question are carefully reviewed, held that:

"The interest of the public in a street does not comprehend any interest in the soil. The right of the freehold is unaffected by establishing the highway. Its use by every citizen must be appropriate for the purpose for which it was intended; that is, of transit, with such stoppage of business, necessity, accident, or the ordinary exigencies of travel may require. The owner of the freehold (the abutting owner) may make any use of the soil not inconsistent with the public easement; and any use of it by another, which is not within the scope of the easement, is an infringement of his rights, for which he may invoke the ordinary legal remedies. The railroad's occupancy is an infringement of the reserved rights of the abutting owner therein, unless it is one of the modes of enjoining the easement in the street contemplated in its original dedication." 51 Ark. 497, 11 S. W. 696, 5 L. R. A. 183.

The court then holds that a railway, as usually constructed and operated, is an additional servitude, and for this reason:

"The right of way of the railroad was carved out of the freehold of the appellants, and not out of the easement controlled by the city. Under the Con-

stitution the city could not transfer it to the appellee. The Legislature could impart no validity to such an attempted transfer." 51 Ark. 499, 11 S. W. 697, 5 L. R. A. 183.

It thus appears that the court in that case based its decision entirely upon the ground that the acts of the railway company constituted a taking of the land, and not merely a damage to abutting property, as in the case at bar. The court then proceeds to determine whether ejectment would lie, when the owner, knowing that a railway had entered on his land and was engaged in constructing its road without having complied with the statute, remains inactive and permits them to go on and expend large sums in the work, and holds that it will not, upon the ground of estoppel, citing numerous authorities to sustain its conclusions. In such a case of taking of property the court holds, and unquestionably that is the law, that the duty of the owner is "to arrest the first step toward appropriation until compensation is made, and to this end the law supplies abundant remedies"; no doubt meaning, among others, the remedy by injunction. Is the building of a viaduct by the city over one of its main streets, where, owing to the numerous railroad tracks, the lives of its inhabitants who must cross these tracks frequently are in great danger, a taking of property, as is the construction of railroad tracks, or is it within the scope of the easement for which the streets are dedicated? The sole purpose of the intended viaduct is to enable the city's inhabitants to cross a dangerous street in safety. That a right of way granted for a street railway, whether operated by horses, electricity, or even steam motors, is not an additional servitude or burden on land dedicated to the use of a public street, and is not, therefore, a taking of private property, is the general rule established by nearly all courts, and, although never determined by the Supreme Court of this state, was declared to be the law of this state by this court in Williams v. City Electric Ry. Co. (C. C.) 41 Fed 556, decided by that eminent jurist Judge Caldwell. In Transportation Co. v. Chicago, 99 U. S. 635, 641, 25 L. Ed. 336, which was an action for damages for the building of a bridge and tunnel, where there was no taking of property, but only damage incidental to the construction of the improvements, and which arose under the Illinois Constitution, containing the same provision as that of Arkansas, the court say:

"It is immaterial whether the fee of the street was in the state or in the city, or in the adjoining lot holders. If in the latter, the state had an easement to repair and improve the street over its entire length and breadth, to adapt it to easy and safe passage."

The authorities are practically unanimous that the construction of a viaduct the whole width of a street is not an additional servitude. Scranton v. Wheeler, 179 U. S. 154, 21 Sup. Ct. 48, 45 L. Ed. 126; Colclough v. Milwaukee, 92 Wis. 186, 65 N. W. 1039; Home Building Co. v. Roanoke, 91 Va. 59, 20 S. E. 895, 27 L. R. A. 551; Selden v. Jacksonville, 28 Fla. 588, 10 South. 457, 14 L. R. A. 370, 29 Am. St. Rep. 278; Willis v. Winona, 59 Minn. 27, 60 N. W. 814, 26 L. R. A. 142; Brand v. Multnomah Co., 38 Or. 92, 60 Pac. 390, 62 Pac. 209, 50 L. R. A. 389, 84 Am. St. Rep. 772; 2 Dillon on Municipal Corporations, § 990.

That municipal corporations in Arkansas have been granted the power to make such improvements cannot be doubted. Section 5,456 Kirby's Dig., grants to all cities and towns "the power to lay off, open, widen, straighten and establish, to improve and keep in order and repair, and to light streets, alleys," etc. And section 5530 provides:

"The city council shall have the care, supervision and control of all the public highways, bridges, streets, alleys, public squares and commons within the city; and shall cause the same to be kept open and in repair, and free from nuisance."

But it is earnestly contended that the act of the Legislature entitled "An act to amend section 6681 of Kirby's Digest of the statutes of Arkansas," approved February 14, 1905 (Acts Ark. 1905, p. 116), makes it the duty of the railroad company to construct such bridges and viaducts, and that the city does not possess that power. The act is as follows:

"Section 1. Whenever any railroad company, or corporation, has constructed, or shall hereafter construct, a railroad across any public road or highway or street in any incorporated city or town in this State now established or hereafter to be established, or where any public road or highway or street in any incorporated city or town hereafter established shall cross any railroad now established. such railway company, or corporation, shall be required to so construct such railroad crossing, or so alter or construct the roadbed of such public road or highway or street in any incorporated town or city, that the approaches to the roadbed on either side shall be made and kept at no greater elevation or depression than one perpendicular foot for every ten feet of horizontal distance, such elevation or depression being caused by reason of the construction of said railroad; provided, at any crossing of any public highway or street in any incorporated city or town, such railroad may be crossed by a good and safe bridge to be built and maintained in good repair by the railroad company, or corporation, owning or operating such road.

"Sec. 2. That all laws and parts of laws in conflict with this Act be and the same are hereby repealed, and this Act take effect and be in force from and after its passage."

The claim is that the word "may" in the proviso should be construed as "shall" or "must," or, in other words, that this proviso is mandatory, and not merely permissive or even directory. During the argument, learned counsel for complainant insisted that, under this proviso, the state, through its Attorney General, can, by mandamus proceedings, compel every railroad in the state to build and maintain, at its own expense, bridges over every highway in the state or street in any incorporated city or town across its tracks, and for this reason the city has no power to build such a bridge at its own expense. In the opinion of this court there is nothing in that act to warrant such a construction. The intention of the Legislature is so clearly expressed and is so free from ambiguity that there is nothing for the courts to construe. The act itself, leaving out the proviso, provides that every railroad company "shall be required to so construct such railroad crossing, or so alter or construct the roadbed of such public road or highway or street in any incorporated town or city, that the approaches to the roadbed on either side shall be made and kept at no greater elevation or depression than one perpendicular foot for every ten feet of horizontal distance." This clear-

ly shows that at all grade crossings, whether across a country road or a street of a city, the corporation must construct the approaches so that there should not be a greater grade than 10 per cent. By the proviso the road is granted the option, without any further act on the part of the county court, if it is a county road, or the municipal authorities, if it is a street in a town or city, to build a bridge across its tracks, if it deems it best to do so. In many instances the railroad may cross a road or street in a deep cut or on a high embankment which would make it more expensive to build the approaches to its roadbed at a 10 per cent. grade than the construction of a bridge, or in populous cities where there is a great deal of travel across the railway tracks, as is charged in the bill is the case in the city of North Little Rock on this street, the railroad may deem it best to build the bridge, owing to the great danger to persons and teams crossing the street. If so, the proviso grants it that privilege. The fact that in the main body of the act the word "shall" is used, while in the proviso the word "may" is used, shows conclusively that the Legislature intended to make a distinction. To give it the construction claimed by the complainant the proviso would nullify the act itself and at the same time place a burden on the railroads, which, if the contention of complainant is sustained, would be required to build bridges over more than 10,000 crossings in this state. It would be unreasonable to presume the Legislature intended to impose such burdens on them unless the language used is so plain and unambiguous that no other conclusion could be reached.

In the case at bar it appears from the bill itself that these railroad tracks were on that street before there was a city, and that the place where the viaduct is to be erected is, and for many years has been, the principal business street in said city. It is therefore apparent that the erection of the viaduct is of great importance for the protection of the lives of the inhabitants of that city, who are necessarily compelled to cross these tracks frequently. It may be a great hardship upon the complainant that his property should thus be damaged, but the Constitution of this state fortunately gives him a remedy by an action for damages, a remedy which at common law did not exist, and which even now is granted but by few states of the Union.

There are allegations in the bill that the city is now considerably indebted, and that, in view of its limited income, it would not have the means to pay any judgment which complainant might recover in an action at law for the damages to his property. In the absence of stronger allegations clearly showing the insolvency of a municipal corporation, courts would not be justified in assuming that fact. On the contrary, under the laws of this state municipalities can be sued like individuals, and while no execution can be issued against the property of such a corporation it possesses the taxing power, and under the laws of the state it may issue warrants on its treasurer in payment of all debts and judgments, which warrants are redeemable when the money is in the treasury, and may at all times be used for the purpose of paying all taxes and other dues to the city. The statutes now in force governing municipal corporations in this state

and providing for the payment of claims and judgments against the city were in force long before the defendant city was organized. When complainant invested his money in property in that city, he was bound to know that the city, in the exercise of its powers and for the protection of the public, might damage his property by the erection of such a viaduct, and that any liability thus incurred could be discharged only in the manner prescribed by law. He therefore must be held to have acquired his property subject to these conditions. It is a well-settled principle of law that every citizen can only hold his property subordinate to certain rights of the public. There has been no change in any of the laws of the state in this respect since he acquired his property, nor have there been any decisions of the highest court of the state which would justify him in the belief that any property purchased by him would not be subject to such damage as he complains of now, as was the case in Muhlkner v. Harlem R. R. Co., 197 U. S. 544, 25 Sup. Ct. 522, 49 L. Ed. 872.

Nothing said in this opinion must be construed as determining the right of complainant to recover damages in an action at law, if, by reason of the building of this viaduct, his property is damaged. All that the court determines in this action is that, if complainant is entitled to any relief, he can obtain it in a court of law, which affords him a complete and adequate remedy.

The demurrer to the bill for want of equity is sustained, and the bill dismissed without prejudice to the complainant to institute any action at law against the defendants for any damage he may sustain by reason of the building of this viaduct.