BUNN, District Judge.
The appeal in this case is taken from an order of the circuit court sustaining a demurrer to the bill, and dismissing the same for want of equity. The bill was filed by property owners abutting Fifth avenue, in the city of Chicago, to enjoin the construction of an elevated railroad on that street in front of the appellants’ property. The point in controversy involves the question of the right of an owner of abutting lots to enjoin the construction of an elevated railroad upon a public street to be used for public purposes, on the ground that the ordinance authorizing such construction was void for want of a sufficient petition of property owners, as required by the statute of the state of Illinois. The circuit court sustained a demurrer to the bill, and refused to grant an injunction. As this is a question of local law appertaining to real estate, we are of opinion that the question should be controlled by the decisions of state courts of Illinois, and the decision of the court below seems to be fully sustained by the decision both of the appellate and supreme courts as well as the circuit courts of the state. The case of John W. Doane v. Lake Street Elevated Railroad Company, in the circuit court for the county of Cook, presented the precise question presented here, and has been decided in the supreme court since this appeal was taken. 46 N. E. 520. The circuit court sustained a demurrer to the bill for want of equity, and the appellate court affirmed the decree, and the case was appealed to the supreme court of the state. The case is not distinguishable from the one at bar. The court, in deciding the appeal, says:
“The question for decision is, do the facts well pleaded in this bill entitle the complainant to the injunction prayed for? It is conceded that the common council of the city of Ohicago is, by the provisions of our statute, given exclusive control and supervision of its streets, the fee of which is vested in the municipality. While they are held in trust for the public use, and can only be appropriated to the purposes for which they were dedicated, it is the settled law of this state that permitting street railroads to be placed therein is not subjecting them to an unlawful use. It has often been so decided by this court as to surface roads, and no good reason has been suggested, and none, we think, can be offered, for making a distinction in this regard between elevated and surface roads. The road in question, if constructed in conformity with the requirements of the ordinance, will certainly obstruct travel upon the loop or street less, and be less hazardous to the public, than would be a surface road. The pillars upon which the superstructure is to be built, which it is claimed will exclude the public from a part of the street, are but a necessary part of the road, as much so as are the rails and other parts of tracks constructed upon the ground, or as are trolley posts placed in the street for operating an electric road by the trolley system. It is true that all these" things do to some extent interfere with the use of the street by ordinary vehicles, but the inconvenience is one which must be borne for the benefit resulting to the public from the better modes of travel, thus afforded.”
Various Illinois cases are cited as authority that the remedy is by action at law for damages. Moses v. Railroad Co., 21 Ill. 516; Chicago, B. & Q. R. Co. v. West Chicago St. R. Co., 156 Ill. 270, 40 N. E. 1008; Murphy v. City of Chicago, 29 Ill. 279; Stetson v. Railroad Co., 75 Ill. 74; Patterson v. Railway Co., 75 Ill. 588; Railroad . Co. v. McGinnis, 79 Ill. 269; Railroad Co. v. Schertz, 84 Ill. 135; *603 Insurance Co. v. Heiss, 141 Ill. 35, 31 N. E. 138. See 16 N. E. 520. Proceeding, the court further says:
“Tlie same doctrine is recognized in Corcoran y. Railroad Co., 149 111. 291, 37 N. E. 68; White v. Railroad Co., 154 Ill. 626, 39 N. E. 270. We said in Chicago, B. & Q. R. Co. v. West Chicago St. R. Co., supra, where the fee of the street is in the city, such damages as the owner may suffer from the laying of a railroad track in the street are merely consequential, so far,, at least, as they affect the property abutting on the street. In such case, as there is no physical taking of the land, injunction will not lie to enjoin the taking, the remedy being an action at law for damages. The real ground upon which relief by injunction is denied in such eases is that, the use of the street being within the purposes for which it is laid out, and therefore a proper use, the right to occupy is properly a question between the defendant and the municipality haying the control of its streets and charged with the duty of keeping them free from unlawful obstructions, or between the defendant and the public generally, the individual being left to his action for damages for an injury resulting to his property. He has no standing in equity on account of public injury, or for the purpose of inflicting punishment upon the defendant for its wrongful acts. He can only invoke that jurisdiction in order to protect his property from threatened injury. His injury is a depreciation of the property which is capable of being estimated in money, and recoverable in an action at law; therefore a court of equity will not interfere by injunction. The principle is that, the abutting property owners having a complete remedy at law, courts of equity will not, upon his allegation that the ordinance authorizing the construction is illegal, enjoin the defendant from proceeding until the question of illegality can be litigated and determined, but remit him to his action at law; and this, it seems to us, is a just and reasonable rule, the enforcement of which will protect the rights of ail parties interested. To hold otherwise would be to render impracticable the building and operation of street-car lines under our statute. While such improvements are owned and operated by private individuals or corporations, the use of the streets is public, and not private, and upon that theory alone they are permitted to be constructed in the streets, and it will not be denied that in large and populous communities they are of great public utility, if not a public necessity. While, therefore, the private owner is entitled to have all his property rights fully protected, that right should be accorded him, if possible, by a remedy which will not unnecessarily injure others, and render impossible the construction and operation of necessary facilities for public travel. A moment’s reflection will, we think, convince any one that if every abutting owner not consenting may enjoin street-railway companies from building their lines in streets upon the ground that the consent of the city has not been legally obtained, because of facts alleged which do not appear upon the face of the proceedings, the building and operation of all such lines will become practically impossible. In a case like this the work would necessarily be stopped until titles to abutting property could be adjudicated and settled, the powers of agents, etc., determined, and the motives which may have prompted owners to give their consent inquired into. After this had been done, which, in the ordinary course of litigation, would require many months, or even years, of time, if the facts should be found in favor of the validity of the ordinance, the work may proceed as to this complainant, he still being entitled to his action for damages. The decision, however, would settle the validity of the ordinance between him and the defendant and no one else. Any number of other owners may, in succession, procure injunctions on the same or similar grounds, and prosecute them to a like final determination. Manifestly, neither persons nor corporations would hazard capital in an enterprise subject to such uncertainty and delay. There is a certain, adequate, and complete remedy at the suit of the public whenever there is a threatened or actual unlawful obstruction of streets and highways, and, as we think, an equally certain, adequate, and exclusive remedy to the abutting owner for all his damages, present and prospective.”
We think these adjudged cases of the supreme court of Illinois are controlling upon this court, and the decree of the circuit court is therefore affirmed.