GENERAL ELECTRIC RY. CO. v. CHICAGO, I. & L. RY. CO.

(Circuit Court of Appeals, Seventh Circuit.　April 13, 1901.)

No. 567.

1. EQUITABLE RELIEF IN FEDERAL COURTS.

　　The federal courts decide for themselves whether for an actual or threatened invasion of a conceded or asserted right equity may afford relief.

2. STREETS—PUBLIC USE—LOADING AND UNLOADING FREIGHT—INTERFERENCE BY TRESPASSER—PROTECTION IN EQUITY.

　　The appropriation, whether by custom or ordinance, of a street adjacent to a railroad freight house to the use of teams, trucks, and wagons in loading and unloading merchandise, is a legitimate public use of the street, of such importance that a mere trespasser, seeking to interfere therewith, should receive scant favor from a court of conscience.

　　Seaman, District Judge, dissenting.

On Rehearing.

Edwin Walker and Thomas A. Moran, for appellant.
Geo. W. Kretzinger and E. C. Field, for appellee.

Before WOODS and JENKINS, Circuit Judges, and SEAMAN, District Judge.

WOODS, Circuit Judge. The decision in this case was handed down on January 12, 1900 (39 C. C. A. 345, 98 Fed. 907), but, in deference to the opinion of the supreme court of Illinois in the case of General Electric Ry. Co. v. Chicago & W. I. R. Co., 184 Ill. 588, 56 N. E. 963, which was claimed to have put upon the Doane Case, 165 Ill. 510, 46 N. E. 520, an interpretation essentially different from that which we had adopted, a rehearing was granted. Besides the original briefs and argument, additional briefs were filed, and an oral argument, nominally in another case, was heard in support of the petition for rehearing; and, after the granting of the petition, further briefs were filed, and full argument at the bar of the court was again heard. Upon reconsideration of all these arguments and briefs, we abide by our first conclusion.

It is urged by counsel for the appellee that the case is not one in which the decisions of the state courts should be recognized as controlling, but is one of general equity, in which this court should exercise an independent judgment. We do not find it necessary, however, to rule upon the question. If the decisions of the state court do not relate merely to the question of remedy, but are to be regarded as determining the right of the abutting owner, denying him all damages, however real and substantial, beyond what a court of law may estimate, they should, perhaps, be followed; but if, conceding the full right, they mean that the appropriate and only remedy is such as the courts of law can give, they are not binding. The federal courts decide for themselves whether, for an actual or threatened invasion of a conceded or asserted right, equity may afford relief.

The Chicago & W. I. R. Case contains nothing to modify our understanding of the opinion in the Doane Case, the different parts of which only upon that understanding can be harmonized with each other, with the decisions of other courts therein cited, with a later opinion of that court, with settled principles of equity, and with an enlightened sense of justice and right. The case was treated by counsel and by the court as one involving only compensable injury. The report of the case contains an abstract of the brief or argument for the appellee, in which there is not even a suggestion that the injury alleged was not remediable at law; and, according to the opinion, nothing more was alleged in the bill or insisted upon in argument, and no showing was made that the ordinance under which the work was being prosecuted was void for lack of power in the city council to pass it. The opinion contains no reference to the decision of this court, though it had been handed down some weeks before, and no mention of the distinction which we made between this case, as involving an irreparable injury, and

the Doane Case, as involving nothing for which an adequate remedy could not be had in an action at law. The charge in the bill in the Chicago & W. I. R. Case, according to the opinion, was—

"That the laying of tracks and operating the street railroad upon the streets in the manner set out in the bill would take from the appellee property, and prevent ingress and egress to and from its property, and thus injure and practically destroy a large part of its property and improvements for the uses and purposes for which they were made."

And, proceeding, the opinion says:

"The bill alleges and sets up facts charging that the ordinance under which the appellant claims the right to erect its track upon said street was obtained by procurement and fraud."

And on the next page it is added:

"The decree restraining the street-railway company from laying its tracks on Custom House Place and on Plymouth Place is based upon the alleged right of the abutting owner to enjoin the erection of a street railway in the street, because there is no valid ordinance authorizing its structure, and because such street-car tracks injuriously affect the appellee, as an abutting owner. The injunction which prevents the building of a street railway across the tracks of a steam railroad on Fourteenth street is based upon the alleged ground that the crossing of the railroad track by the track of the street-railway company at grade is a physical taking of the steam-railroad company's property, and an invasion of its property rights, whereby its property is damaged, and the profitable use thereof diminished."

Then, after declaring that the question "whether or not the right of an abutting property owner to enjoin the construction of a street railway in the streets of a city or village on the grounds that the property of an abutting owner would be injuriously affected or damaged as a consequence of the building of such street railway, or that the street railway is without legal authority, is not an open question in this state," and after quoting from the Doane Case, the opinion proceeds:

"The allegation of an abutting property owner that the construction and operation of a street railway in front of his property will lessen its value or injuriously affect it, or the allegation that the construction of the street railway in the street is illegal or unauthorized, will not give such abutting property owner a standing in a court of equity to enjoin the construction of such road."

In all this there is no inconsistency with anything in the opinion of this court, and there is certainly nothing which can be said to so broaden the Doane decision, either in terms or in principle, as to cover a case of irreparable injury; and that the opinion was not intended to put upon the decision in the Doane Case an interpretation which should include cases of irreparable wrong is still the more probable, because in the case of Pennsylvania Co. v. City of Chicago, 181 Ill. 289, 54 N. E. 825, 829, written by the same judge, a contrary understanding had been distinctly indicated. In that case, as in the Doane Case, it was held that the Pennsylvania Company, owning the abutting property, could not have an injunction to restrain the city from establishing a hack stand in the street in front of the north end of the Union Station for passengers, because it had a complete remedy in an action for damages for any use of the street inconsistent with its rights; but in the concluding para-

graph of the opinion the distinction, which, as we think, is plain and is unequivocally recognized in the Doane decision, is reaffirmed in this expression, "These complainants cannot, in the interest of the public, resort to this remedy, and have shown no special or peculiar injury to their property, entitling them to an injunction." Why was this said, if in no case, whatever the character of the injury, the individual owner of property, in order to clear his way into a court of equity, where alone protection can be had against wrongs irremediable at law, may not assert the invalidity of an ordinance which, if assailed in the name and interest of the public, is confessedly void? Ordinarily a void thing may be ignored by any one concerned. On considerations of public policy it has been ruled, and doubtless wisely, that an individual, asserting only an injury for which suitable compensation may be obtained at law, may not attack a public ordinance formally adopted, and under which a public work, perhaps of great importance, is being prosecuted; but if the doctrine is to be applied when private injury is about to be inflicted, for which the relief obtainable at law could not be even approximately adequate, it becomes a bald denial of justice. The like of it has found recognition thus far, we believe, only in briefs, to which, in the face of criticism at the bar of the court, counsel have not shown an unflinching adhesion. Indeed, the contention advanced—that a street-car line not being a burden upon the street upon which it is laid, beyond what was contemplated when the street was laid out and dedicated to the public use, the abutting owner is estopped to claim damages arising from the construction and operation of a street railway in front of his premises—proves too much. If it demonstrates that the abutting owner cannot have an injunction against a peculiar and irreparable injury, it shows with equal conclusiveness that he may not sue at law for a peculiar injury of a character that admits of compensation in damages. In the nature of things and on principle there is the same right to go into equity for an injunction against a threatened irreparable injury as there is to go into a court of law to recover damages for a compensable wrong. If the laying of the street railway be duly authorized, as by a valid ordinance, there can, of course, be no injunction, if there be no actual taking of property outside of the limits of the street; and for all consequential injuries, no matter how direct and proximate, the sufferer must be content with such compensation as the courts of law can afford, however inadequate in fact; but what good reason can there be for the application of that rule, when the ordinance under which an inestimable damage is about to be inflicted is void? Why should there be an estoppel against denying the validity of the invalid,—against denouncing as void an act which is in fact void, under which it is proposed to inflict an irremediable wrong? If there were no pretense of an ordinance or of other form of authority for the proposed invasion of the street, is it to be said that the owner of abutting property threatened with injury may not have relief by injunction, but must look only to the uncertain and insufficient remedies of the law? Would a forged ordinance, put upon the records of the common council without the knowledge

or consent of the body by whom it purported to have been enacted, be beyond impeachment except by a public prosecutor, who, as the supreme court of the state has held, could move only in the public interest, at the risk of the dismissal of the proceedings if shown to be for the protection of private rights,—the only rights, in most instances, likely to be imperiled? But if the work of laying a street railway, prosecuted without pretense of authority or under a forged ordinance, may be enjoined at the suit of one threatened with irreparable wrong, why should it not be enjoined in a like case if prosecuted under an ordinance which for any reason is illegal and void, not voidable merely? In either case the company prosecuting the work without authority is not in any sense a representative of the public, performing a public duty under a franchise conferred, but is simply a trespasser, exempt by right from no prosecution necessary to the protection of one injured or threatened with injury. In any such case there is no danger of a needed public work being unduly interrupted or delayed, because a court of equity, applying strictly the doctrine of laches, will not entertain a bill which shall not have been brought promptly, and before large outlays could have been made in good faith, or shall have been brought under circumstances which would make the granting of the relief sought more harmful than the wrong to be remedied or prevented. It is useless to talk of relief through the public prosecutor or the attorney general of the state. Under the decision in People v. General Electric Ry. Co., 172 Ill. 129, 50 N. E. 158, a suit by the attorney general, even though prosecuted upon the joint request and for the benefit of all or a majority of the residents and owners of property upon a street to enjoin the construction of a street railway under a void ordinance, would be subject to dismissal because prosecuted for the benefit of private interests.

There is another phase of the case, about which there was comment at the hearing, on which the opinion in the case of Pennsylvania Co. v. City of Chicago, already referred to, has an important bearing. Departing somewhat from the theory insisted upon here,— that the primary object of a street, from curb to curb, was "for the free passage of the public, and anything which impeded that free passage was a nuisance," and hence the use of Custom House Place for teams and trucks standing to load and unload at the freight house of the appellee was an unlawful appropriation of the street to private use,—the court in that case, while recognizing that in a sense the railroad company was a private corporation, and "that the use of its depot for the purpose for which the land was acquired and the building was erected, and the use of the railroad companies having access thereto could not be judicially interfered with by an ordinance of the city to the damage of the companies," yet, in view of the fact that the railroad company was in many respects a public corporation, invested with powers which made it more than a mere private body, held it to be a legitimate exercise of power by the city to establish in the street in front of the station a stand for hacks, within convenient reach of the thirty-one thousand people received and discharged daily at that station. The logic of this

is that the appropriation, whether by custom or by ordinance, of the street adjacent to the freight house of the appellee to the use of teams, trucks, and wagons employed in loading and unloading merchandise in course of shipment and delivery, was a legitimate public use of the street, of such importance that a mere trespasser, seeking to interfere with it, should receive scant favor from a court of conscience. The true doctrine is, we conceive, as it was stated by the supreme court in D. M. Osborne & Co. v. Missouri Pac. Ry. Co., 147 U. S. 248, 259, 13 Sup. Ct. 303, 37 L. Ed. 161, cited with approval in the Doane Case, that "where there is no direct taking of the estate itself, in whole or in part, and the injury complained of is the infliction of damage in respect to the complete enjoyment thereof, a court of equity must be satisfied that the threatened damage is substantial, and the remedy at law in fact inadequate, before restraint will be laid upon the progress of a public work." It is, of course, true, as said in the next sentence, that "if the case made discloses only a legal right to recover damages, rather than to demand compensation, the court will decline to interfere"; but that plainly is meant, not to qualify the preceding statement, but to distinguish between cases of consequential injury and cases in which there has been a physical invasion or taking of property, which may be enjoined if compensation be not first made, even though the damages be slight,—courts of equity in such cases not being, as the chief justice expressed it, "curious in analyzing the grounds upon which they rest their interference"; but, if there is to be no direct taking of any part of the estate, the case will be regarded as disclosing only a legal right to recover damages, except that equity will interfere by injunction when "satisfied that the threatened damage is substantial, and the remedy at law in fact inadequate."

The order of the circuit court is affirmed.

SEAMAN, District Judge. I am constrained to dissent from the conclusion which affirms the decree in this case, for the reason that it is opposed to what I understand to be the settled rule of law in Illinois governing the rights in controversy, and to the decisions, as well, of this court, following such rule. The doctrine thus established by the cases in the supreme court of Illinois, from Moses v. Railway Co., 21 Ill. 516, to Doane v. Lake St. El. Ry. Co., 165 Ill. 510, 46 N. E. 520, and reaffirmed in the recent case of Chicago & W. I. R. Co., is substantially this: That the fee of the street is vested in the state and municipality for public use; and not in the abutting owner; that use of such street by a railway is legitimate use, and the right exists in the state, and through delegation in the city, to grant the privilege; that the question whether the power has been duly exercised by the city to make the grant can be raised on behalf of the public only, and not by an abutting owner; and finally that an abutting owner has no standing for relief by injunction against such use. This court has recognized and applied the rule of these authorities in Blodgett v. Railway Co., 26 C. C. A. 21, 80 Fed. 601, and Coffeen v. Railway Co., 28 C. C. A. 274, 84 Fed. 46, and the fact that the consequential injury in those

cases was not so plainly irreparable as that which appears to be involved in the case at bar does not seem to be sufficient ground for ignoring the rule of stare decisis there approved.