ATCHISON, T. & S. F. RY. CO. v. GENERAL ELECTRIC RY. CO.

(Circuit Court of Appeals, Seventh Circuit.    January 7, 1902.)

No. 684.

1. STREET RAILROADS—USE OF STREETS—INJUNCTION.

Under the rules of decision in Illinois, authority given a steam railroad by a city to cross a street with its tracks confers no exclusive rights in such street, but the right granted is subordinate to the use of the street for ordinary street purposes, which include the operating of a street railroad thereon; and the railroad company is not entitled to damages because of the construction of a street railway along such street, on the ground of delay to its trains, and increased danger at the crossing, nor can it maintain a suit in equity for an injunction against such use.

2. SAME—ALLEGED INVALIDITY OF ORDINANCE—ATTACK BY PRIVATE SUITOR.

Under the settled rule of decision in Illinois, a railroad company, which has constructed its tracks across a street under authority from the city, has no standing in equity to attack the validity of an ordinance granting a franchise for a street railroad along such street, either on the ground of fraud or for want of power in the city council to pass it.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

The Atchison, Topeka & Santa Fé Railway Company, complainant below, appeals from a decree of the circuit court sustaining demurrer to its amended bill for want of equity, and thereupon dismissing the bill, which is filed to enjoin the construction and operation by the appellee, the General Electric Railway Company, of a proposed street railroad in Dearb rn street, in the city of Chicago, "over, across, or in the vicinity of the tracks" used by the appellant "in said street," held under leases from the company owning the terminals in Chicago. The appellant's allegations of interest in the subject-matter are thus summarized in the brief filed on its behalf: "That on or about August 1, 1887, there was duly passed by the city council of Chicago and became effective an ordinance entitled 'An ordinance granting permission and authority to the Atchison, Topeka & Santa Fé Railroad Company in Chicago to construct, maintain and operate a railroad,' wherein and whereby permission and authority were given and granted to said Atchison, Topeka & Santa Fé Railroad Company in Chicago, a corporation of this state, its lessees and successors, to construct, maintain, and operate a railroad, with one or more railroad tracks, with the necessary and convenient side tracks, turnouts, switches, and appurtenances, along certain lines and routes in said ordinance designated, and including the tracks afterwards laid across Dearborn street; that under this ordinance the Atchison, Topeka & Santa Fé Railroad Company in Chicago constructed its tracks in said city, including its main freight track, across Dearborn street, in the vicinity of Fifteenth street, together with a large number of side tracks connecting therewith on either side thereof, on lands owned by it, and leading to the freight house and freight yards located near and upon State street, and connecting the same with what is known as the 'Eighteenth Street Yards,' in said city; that the appellant is the lessee for a long term of years of the railroad and property of the Atchison, Topeka & Santa Fé Railroad Company in Chicago, including the above tracks, and the same are used as the terminals in this city of the appellant, and appellant is also possessed under certain contracts and leases for a long term of years of the right to occupy, use, and enjoy a certain other track or side track adjacent to said main freight track in Dearborn street, and connecting with its other tracks, side tracks, and switches extending to its freight depot and yards near and on State street; that it carries to its said freight yards a vast amount of freight traffic, and in the movement of freight cars, loaded and empty, between said yards and for transportation over its lines, it has in the past required, and will in the

future require, almost constant use of said main freight track and side track adjacent thereto across Dearborn street; that owing to the grade of its tracks on either side of Dearborn street, and the depression of the same to the west thereof, required to be made by ordinance of the city in respect to track elevation, a certain momentum must be given to cars and trains to move the same across said street, and, on account of the depression and a subway on the west side of Dearborn street required by said track elevation ordinance and retaining walls rendered necessary thereby, the view from engines thereon to trolley cars in the street, and from trolley cars to engines and cars approaching from the west, is so greatly obstructed as to render the crossing of such trolley cars and engines exceedingly dangerous, and collisions are liable to frequently occur, even with the use of the greatest care, and lives of employés and passengers jeopardized; that on the east side of Dearborn street, south of the main freight track, are several large buildings which obstruct the view of an approaching trolley car, and impede and render more dangerous the movement of cars over said Dearborn street from tracks east thereof; that a vast amount of tonnage of freight must necessarily be moved over said terminals to and between said freight yards, and from its main line to the freight depot, in order to accommodate shippers in the said city of Chicago, and that heretofore it has enjoyed the use of said tracks across Dearborn street without unlawful interruption or obstruction thereof, and it is entitled to continue the use without unlawful interruption or obstruction; that the tracks and terminals in the vicinity of Dearborn street connect with the tracks and terminals of a number of other railroads terminating in the city, forming a great terminal system, and requiring the interchange of freight traffic between said companies." The bill further alleges the incorporation of the appellee for the purpose of constructing and operating street railways in the city of Chicago, but that it is invested with no power or capacity to carry out such purpose; that it proceeded "fraudulently, corruptly, and in threatened willful violation of the rights of the complainant, and in disregard of the requirements of the statutes," and procured the passage by the city council of Chicago of a "pretended and void ordinance," on January 13, 1896, which purported to authorize the construction and operati n of a street railway upon certain streets of the city, including Dearborn street at the place of the appellant's crossing thereof; that the petition upon which such ordinance was procured had no assent of the owners of one-half of the lot frontage on said Dearborn street, as required by statute, and was without the assent of the appellant or its lessor; that the railroad properties fronting thereon were excluded from computation in that behalf; and that signatures which were presented were in some instances forged, and in others unauthorized or withdrawn, so that the ordinance was unauthorized, and "in direct violation of the statute." The intention and preparations of the appellee to construct such railway upon Dearborn street and at grade across the tracks of the appellant are further alleged, and that such construction and crossing "will constitute a death trap, be full of constant danger to trainmen and the public traveling on said electric car line at that point," and will constantly impede appellant "in the movement and transaction of its freight business, and render its freight house and freight yards, team tracks and railroad tracks, in the vicinity thereof, to a large extent useless," and the obstruction and interruption of its use of the tracks on Dearborn street by street cars over this crossing "would in a large measure destroy" such use, and "greatly endanger the operation of engines and cars over the same"; that other and sufficient street car lines exist in the immediate vicinity, and there is no public necessity or demand for the construction or use thus proposed; and that the proposed construction and use "will cause great and incalculable damage" to the appellant.

Robert Dunlap, for appellant.

Edwin Walker and Thomas A. Moran, for appellee.

Before JENKINS, Circuit Judge, and BUNN and SEAMAN, District Judges.

SEAMAN, District Judge, after making the foregoing statement, delivered the opinion of the court.

The appellant has a great railway system extending between Chicago and the Pacific Coast, with valuable terminals in Chicago held under leases, but its right to maintain this bill must be tested by its property interests in the crossing at Dearborn street, and not by the mere vicinity of its important interests and connecting tracks. The case presented differs materially from that in which an injunction in favor of abutting property owners was sustained by this court in General Electric R. Co. v. Chicago, I. & L. Ry. Co., 39 C. C. A. 345, 98 Fed. 907, recently affirmed on rehearing by a majority opinion (46 C. C. A. 629, 107 Fed. 771), as the only question which was there involved or decided was the right of an abutting property owner to relief in equity for irreparable injury to such property by the proposed railway construction in the street, which would deprive the owner of reasonable access to his property, and the remarks in the opinion in reference to Doane v. Railroad Co., 165 Ill. 510, 46 N. E. 520, 36 L. R. A. 97, 56 Am. St. Rep. 265, General Electric Ry. Co. v. Chicago & W. I. R. Co., 184 Ill. 588, 56 N. E. 963, and other Illinois cases, are not applicable to the case at bar. That decision well recognizes that the abutting owner is vested with an appurtenant interest in the street which gives access to his property, though not owning the fee in the street, and that such interest is threatened with an actionable injury; and thereupon rules that the allegations in the bill of irreparable injury are sufficient to distinguish the case from those cited, and that, at the utmost, if the decisions in Illinois, "conceding the full right" to damages, "mean that the appropriate and only remedy is such as the courts of law can give, they are not binding," as "the federal courts decide for themselves whether for an actual or threatened invasion of a conceded or asserted right equity may afford relief." On the other hand, this appellant has no such interest in the portion of the street in controversy as was involved in that case, and no property right in easement or fee which is independent of the rights of the general public therein, unless its permit from the municipality to cross Dearborn street with its tracks for the purposes of railway passage and traffic confers an interest within the rule there upheld, and it is elementary that the extent of the interest thus acquired in street and crossing is governed by the lex rei sitæ.

The doctrine is firmly established in the state of Illinois, in accordance with the general weight of authority, that by the construction and use of street railway tracks no additional burden is imposed upon the easement, as such use "falls within the purposes for which streets are dedicated or acquired" (2 Dill. Mun. Corp. [4th Ed.] § 722); but that the use for steam railway purposes is beyond the general public easement, and imposes an additional servitude (Chicago, B. & Q. R. Co. v. West Chicago St. R. Co., 156 Ill. 255, 267, 273, 40 N. E. 1008, 29 L. R. A. 485, and cases cited; Bond v. Pennsylvania Co., 171 Ill. 508, 513, 49 N. E. 545; General Electric Ry. Co. v. Chicago & W. I. R. Co., 184 Ill. 588, 56 N. E. 963). It is equally well settled by the uniform line of decisions in the same

state that the use of a street by a steam railway is legitimate when duly authorized, but that no exclusive use is conferred by the permit, and it can "only be enjoyed in common with the use of the avenue by the public as an ordinary highway, and without materially impairing its usefulness as such." Pittsburg, Ft. W. & C. R. Co. v. Reich, 101 Ill. 157, 173; Ligare v. City of Chicago, 139 Ill. 46, 62, 28 N. E. 934, 32 Am. St. Rep. 179; Chicago, B. & Q. R. Co. v. West Chicago St. R. Co., 156 Ill. 255, 265, 267, 273, 40 N. E. 1008, 29 L. R. A. 485; Pennsylvania Co. v. City of Chicago, 181 Ill. 289, 296, 54 N. E. 825, 53 L. R. A. 223; General Electric Ry. Co. v. Chicago & W. I. R. Co., 184 Ill. 588, 56 N. E. 963. With the rights of the appellant in this street crossing thus defined, they are in subordination to the use for street purposes, which includes use for a street railway. The right is held in common, is "joint and mutual, not exclusive" (Reich's Case, 101 Ill. 157, 175); and the primary object of the street is for ordinary passage and travel, of which the public and individuals cannot rightfully be deprived (Ligare's Case, 139 Ill. 46, 62, 28 N. E. 934, 32 Am. St. Rep. 179; General Electric Ry.'s Case, 184 Ill. 588, 595, 56 N. E. 963). The bill alleges as the substantial injury which the appellant will suffer by the proposed crossing of its tracks by the street railway that it will cause delay and greatly increase the danger of operating its engines and trains over the crossing. Threatened injury to its tracks in making such crossing is also averred in general terms, but no facts are stated from which the injury referred to can be deemed irreparable, or of such character that equitable relief could rest thereon. The proposed use of the street, however, for a street railway is within the public purposes of the street, and, as held by the authorities cited supra, imposes only the burden to which the steam railway crossing was subjected by the permit. For such crossing of the steam railway tracks at grade by a street railway "damages are not allowable for increased delay or danger in crossing" (Chicago, B. & Q. R. Co. v. West Chicago St. R. Co., 156 Ill. 255, 267, 40 N. E. 1008, 29 L. R. A. 485), and it is plain that a bill cannot be maintained on behalf of the appellant to enjoin the construction and use to that end, unless the fact of construction without due authority,—namely, through the alleged invalidity of the ordinance purporting to grant the use of the street to the street railway company,—can be invoked for that purpose and thus constitute a cause of action. It is alleged that the ordinance is void for fraud in its procurement and for want of the requisite petitioners to authorize its adoption, and, if the appellant has no standing in equity to raise that objection, it is unnecessary to pursue the inquiry further. Upon the contention thus narrowed, the adjudications in Illinois are in point and conclusive (as held by this court in Blodgett v. Railroad Co., 26 C. C. A. 21, 80 Fed. 601, and Coffeen v. Railway Co., 28 C. C. A. 274, 84 Fed. 46) that the question whether the ordinance was either fraudulently obtained or invalid cannot be raised by the appellant. Patterson's Case, 75 Ill. 588; Doane's Case, 165 Ill. 510, 46 N. E. 520, 36 L. R. A. 97, 56 Am. St. Rep. 265; General Electric Ry.'s Case, 184 Ill. 588, 56 N. E. 963. Indeed, the brief submitted on behalf of the appellant con-

-cedes this view, in so far as the allegations relate to fraud in procuring the ordinance, remarking that "in such case action would have to be taken in the name of the city or by the public prosecutor," and relief is claimed solely on the ground that the ordinance "is absolutely void, because, under the circumstances stated in the bill, the city council has no power to grant to the appellee the right to lay down its railroad tracks." This distinction, however, is without force, under the authority of both the Doane Case and the General Electric Ry. Case, supra. In the former the bill for an injunction alleged the invalidity of the ordinance upon the same grounds asserted here, and the opinion, dismissing the bill for want of equity, thus answers the like contention thereupon:

"But it is insisted on behalf of the complainant that on the facts set up in his bill the ordinance must be treated as passed without the required consent of abutting owners, and therefore illegal and void, which being true, the defendant should be held as proceeding with the work without, any authority of law whatever, whereas in the cases referred to lawful consent of the city was shown. The real ground upon which relief by injunction is denied in such case is that the use of the street being within the purposes for which it is laid out, and therefore a proper use, the right to occupy is properly a question between the defendant and the municipality having the control of its streets and charged with the duty of keeping them free from unlawful obstructions, or between the defendant and the public generally, the individual being left to his action for damages for any injury resulting to his property. He has no standing in equity on account of public injury or for the purpose of inflicting punishment upon the defendant for its wrongful acts."

Again, in the recent case of General Electric Ry., supra, the supreme court applied this rule in respect of like allegations of invalidity touching the identical ordinance involved in the present action, and in reference to a railroad crossing at Fourteenth street, over which the same street railway was in course of construction.

With the right and interest of the appellant thus distinguished, so that the rule held by this court in General Electric R. Co. v. Chicago, I. & L. Ry. Co., 39 C. C. A. 345, 98 Fed. 907, and 46 C. C. A. 629, 107 Fed. 771, is not applicable, we are of opinion that the decree below is in accord with the well-established doctrine in Illinois, and the decisions of this court thereupon (Blodgett v. Railroad Co., 26 C. C. A. 21, 80 Fed. 601; Coffeen v. Railway Co., 28 C. C. A. 274, 84 Fed. 46), and with like rulings in Chicago & C. Terminal Ry. Co. v. Whiting, H. & E. C. St. Ry. Co., 139 Ind. 297, 304, 38 N. E. 604, 26 L. R. A. 337, 47 Am. St. Rep. 264, and Market St. Ry. Co. v. Central Ry. Co., 51 Cal. 583.

The decree is accordingly affirmed.