EAST ST. LOUIS RY. CO. v. LOUISVILLE & N. R. CO.

(Circuit Court of Appeals. Seventh Circuit. October 10, 1906.)

No. 1,317.

1. RAILROADS—USE OF STREETS—INJUNCTION TO PREVENT CROSSING BY STREET RAILROAD.

Under the settled law of Illinois, authority given a railroad company by a city to cross a street with its tracks confers no exclusive rights in such street, but the right granted is subordinate to the use of the street for ordinary street purposes, which include the operating of a street railroad thereon; and the railroad company cannot maintain a suit in equity to enjoin the building and operating of a street railroad upon such street. crossing its tracks at grade. on the ground that such crossing will cause inconvenience to it in the operation of its trains, and add to the dangers of the street crossing.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, §§ 235, 195, 197.]

2. MUNICIPAL CORPORATIONS—POWER OF CITY COUNCIL TO REGULATE RAILROAD CROSSINGS IN STREETS—ILLINOIS STATUTES.

The plenary powers given to city councils as governmental agencies of the state by City & Village Act Ill. c. 24, § 62 (Hurd's Rev. St. 1905), to regulate the use of the streets of the city, to permit their use by street railroads, and regulate the crossing of streets by railroads, includes power to authorize the crossing of a railroad track over a street by a street railroad; and such power is not taken away or affected by Act July 1, 1889, p. 223, 3 Starr & C. Ann. St. Ill. c. 114, par. 112, p. 3292, creating the State Railroad and Warehouse Commission, with power to prescribe the place where, and the manner in which, one railroad company may cross with its tracks the tracks of another company.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, §§ 1464, 1465; vol. 41, Railroads, §§ 255, 256.]

Appeal from the Circuit Court of the United States for the Eastern District of Illinois.

The appellee, organized under the laws of Kentucky, and lessee of a railroad corporation organized under the laws of Illinois, had constructed and operated, long before the time of the controversy in question, its railway tracks across Seventh Street, in the City of East St. Louis, at the point in dispute.

The appellant is a corporation organized under the laws of Illinois, authorizing the organization of street railroads, and is operating its street railway in the city of East St. Louis, for the carriage of passengers and their hand bag-

gage; 'never having done, and never having been authorized by its charter to do, a general railroad business.

October 24th, 1904, the city council of East St. Louis authorized appellant to construct and operate its street railroad upon Seventh Street, across the tracks of appellee; expressly providing that such crossing be at grade, and specifying the manner of construction and operation, including gates and such other safety precautions as were deemed necessary by the council.

This crossing of its tracks at grade by the street railway, was resisted by the appellee—a petition invoking the jurisdiction of the Railroad and Warehouse Commission of the State of Illinois, to prevent such crossing, being filed October 22nd, 1904; to which petition appellant filed its answer, denying that the Commission had jurisdiction of the subject matter of the crossing. Notwithstanding this challenge of its jurisdiction, the Commission, December 16th, 1904, entered an order that denied the motion to dismiss, and forbade the construction and operation of the street railway as authorized in the ordinance granted by the city council, unless such crossing was effected by an over head bridge.

Certain correspondence ensued between the vice-president of appellant, and the general manager of the appellee—a correspondence that appellee construed as a threat that the appellee would, notwithstanding the order of the Commission complete its crossing at grade—whereupon a bill was filed, upon which, at final hearing, the decree appealed from was entered, restraining appellant from entering upon the right of way and railroad tracks of appellee at the point in dispute, or any point immediately adjacent thereto, except for the sole purpose of constructing and maintaining an over head bridge as prescribed by the Railroad and Warehouse Commission.

The further facts are stated in the opinion.

M. W. Schaefer and W. M. Warnock, for appellant.

J. M. Hamill, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

GROSSCUP, Circuit Judge. The bill set forth, and the decree found, facts tending to show that a crossing at grade, at the point named, owing to the curvature and grade of appellee's tracks, would increase the inconvenience of appellee in the operation of its road, and would add to the dangers to life at such crossing. But these facts, standing alone, do not constitute a ground for the injunction. Atchison, Topeka & Santa Fé Ry. Co. v. General Electric Co. (Circuit Court of Appeals, Seventh Circuit) 112 Fed. 689, 50 C. C. A. 424.

The bill also avers, and the decree finds, that a certain other electric railroad, organized under the street railway act of the State of Illinois, running between the city of East St. Louis and Alton, had an agreement with appellant, by which appellant was under contract to take its cars at the city limits—operating them, from that point, over the tracks of appellant on Seventh Street, to their destination in East St. Louis, for a certain annual rental; and that certain other electric roads, organized under the railroad act of the state of Illinois, had been theretofore permitted by appellant to run their cars over appellant's tracks into the City of East St. Louis; from which it is argued that the crossing in dispute will become, in fact, a crossing between companies doing a general railroad business, and is therefore within the jurisdiction of the Railroad and Warehouse Commission. But if, independently of these facts, the crossing in dispute is not within the jurisdiction of the Commission, we need not pursue the inquiry as to what would be the effect in case such crossing is used by these other roads; for the charter of appellant does not cover such case, and the

injunction appealed from does not limit itself to any threatened abuse of appellant's charter in that respect. Should such use be attempted, appellee would have its appropriate remedy to prevent injury.

The single inquiry presented to us, therefore, is this: The city council having granted to a street railway company, doing only a street railway business, the right to cross at grade the tracks of a railroad theretofore laid across such street, the crossing to be at a point within the street, has the Railroad and Warehouse Commission of Illinois jurisdiction either to prevent such crossing or prescribe the terms upon which such crossing shall be made?

Section 62, chapter 24, of the City and Village Act of Illinois (passed originally in 1872; Hurd's Rev. St. 1905), provides that the city council shall have power to establish, alter, grade, and otherwise improve streets and alleys; to regulate the use of the same; to permit, regulate, or prohibit the locating and construction of any horse railroad, such permission not to be for longer than twenty years; to provide for and change the location, grade, and crossing of any railroad; and to compel railroads to raise or lower their tracks, to conform to any grade which may be established by the city.

In Robey v. City of Chicago, 215 Ill. 608, 74 N. E. 770 (decided June 23rd, 1905), it was said:

"The City Council, under the General Incorporation Act, which is in force in the City of Chicago, has full power to pass an ordinance granting to a street railway company the right to operate its street railroad in the streets of the city, subject to such limitations as have been imposed upon such municipalities by the Legislature, and in so doing may prescribe the terms and conditions upon which said company may occupy the streets of the city with its tracks, cars, etc. The city, in passing such ordinance, performs a legislative function, and in so doing acts as a governmental agency of the state, and the ordinance, when passed, had the force and effect of a law of the state. In People v. Suburban Railroad Company, 178 Ill. 594, on page 605, 53 N. E. 349, on page 352, 49 L. R. A. 650, it is said: 'The state does not, however, exercise directly that full paramount power which it possesses over streets, alleys,' etc., but in the distribution of governmental powers the General Assembly adopted the policy of selecting the cities and villages of the state as governmental agencies and delegating to such municipalities the power to regulate and control the use of the streets, alleys, etc., within their respective limits. Such power thus delegated is exercised by the municipal authorities acting in behalf of the state for the benefit of the public."

In Atchison, T. & S. F. Ry. Co. v. the General Electric Railway Company, supra, it was said:

"The doctrine is firmly established in the state of Illinois, in accordance with the general weight of authority, that by the construction and use of street railway tracks no additional burden is imposed upon the easement, as such use 'falls within the purposes for which streets are dedicated or acquired,' (2 Dillon Municipal Corporations [4th Ed.] § 722,) but that the use for steam railway purposes is beyond the general public easement and imposes an additional servitude. C., B. & Q. R. R. Co. v. Street Railroad Co., 156 Ill. 255, 267, 273, 40 N. E. 1008, 29 L. R. A. 485, and cases cited; Bond v. Pa. Ry. Co., 171 Ill. 508, 513, 49 N. E. 545; General Electric Railway Co. v. Chicago & W. I. R. R. Co., 184 Ill. 588, 56 N. E. 963. It is equally well settled by the uniform line of decisions in the same state, that the use of a street by a steam railway is legitimate when duly authorized but that no exclusive use is conferred by the permit and it can 'only be enjoyed in common with the use of the avenue by the public as an ordinary highway, and without materially impairing its usefulness, as such.' Pittsburg, Ft.

Wayne v. Chicago R. R. Co. v. Reich, 101 Ill. 157, 173; Ligare v. City of Chicago, 139 Ill. 46, 62, 28 N. E. 934, 32 Am. St. Rep. 179; C. B. & Q. R. R. Co. v. Street R. R. Co., 156 Ill. 255, 265, 267, 273, 40 N. E. 1008, 29 L. R. A. 485; Pennsylvania Co. v. City of Chicago, 181 Ill. 289, 296, 54 N. E. 825, 53 L. R. A. 223; General Electric Railroad Co. v. Chicago & W. I. R. R. Co., 184 Ill. 588, 56 N. E. 963. With the rights of the appellant in this street crossing thus defined they are in subordination to the use for street purposes, which includes use for a street railway; the right is held in common, is 'joint and mutual, not exclusive,' (Reich Case, 101 Ill. 157, 175) and the primary object of the street is for ordinary passage and travel of which the public and individuals, cannot rightfully be deprived. Ligare Case, 139 Ill. 46, 52, 28 N. E. 934, 32 Am. St. Rep. 179; General Electric Ry. Case, 184 Ill. 588, 595, 56 N. E. 963."

Other decisions in line with these holdings are: C., B. & Q. R. R. Co. v. Street R. R. Co., 156 Ill. 256, 40 N. E. 1008, 29 L. R. A. 485; Ry. Co. v. Street Railroad Co., 156 Ill. 385, 386, 40 N. E. 1014; Doane v. Lake Street El. R. R. Co., 165 Ill. 517, 46 N. E. 520, 36 L. R. A. 97, 56 Am. St. Rep. 265; Harvey v. Aurora & G. Ry. Co., 174 Ill. 295, 51 N. E. 163; Harvey v. Aurora & G. Ry. Co., 186 Ill. 283, 57 N. E. 857; Gen'l Elec. Ry. Co. v. C. & W. I. R. R. Co., 184 Ill. 588, 56 N. E. 963; Hartshorn v. I. V. Tr. Co., 210 Ill. 609, 71 N. E. 612; Wilder v. Aurora, etc., Tr. Co., 216 Ill. 493, 75 N. E. 194—from which it is plain that unless the power of the city to regulate crossings of railroad tracks by street railways, such crossing being in the streets of the city, is meant by the act of 1889, creating the Railroad and Warehouse Commission, to be subject to the jurisdiction of that commission, when its jurisdiction is invoked, the power of the city, over the subject here in dispute, remains plenary and exclusive.

The act creating the Railroad and Warehouse Commission (Act July 1, 1889, p. 223) is entitled "An Act in relation to the crossing of one railway by another, and to prevent danger to life and property from grade crossings," and reads as follows:

"That hereafter any railroad company desiring to cross with its tracks the main line of another railroad company, shall construct the crossing at such place and in such manner as will not unnecessarily impede or endanger the travel or transportation upon the railway so crossed. If in any case objection be made to the place or mode of crossing proposed by the company desiring the same, either party may apply to the board of railroad and warehouse commissioners, and it shall be their duty to view the ground, and give all parties interested an opportunity to be heard. After full investigation, and with due regard to safety of life and property, said board shall give a decision, prescribing the place where and the manner in which said crossing shall be made, but in all cases the compensation to be paid for property actually required for the crossing and all damages resulting therefrom shall be determined in the manner provided by law in case the parties fail to agree." Starr & C. Ann. St. vol. 3, c. 114, par. 112, p. 3292.

It will be noted, first that the title to the act is "In relation to the crossings of one railway by another." This does not necessarily include, in terms at least, street railways.

It will be noted, also, that the act of 1889 leaves to condemnation proceedings, "in manner prescribed by law in case the parties fail to agree," all question of compensation or damages, growing out of the property actually required for the crossing, or the nature of the crossing prescribed. Now no land is required to be taken for the grade

crossing of a street railway over a railroad in the streets; and it is doubtful if condemnation proceedings are open to a street railway to ascertain its damage, in case the street railway is compelled to go over head by bridge.

It will be noted, also, that in no case decided in the Supreme Court of Illinois, or in the United States Courts sitting within Illinois, has the plenary and exclusive power of cities and villages over the location of street railway crossings been denied or abated. Indeed, it would come as a surprise, both to the bar and to the people, were it to be held, that in the location of street railways crossing each other, or other railroads, and the manner of such crossing, within the streets, the final power no longer resided in the local authorities, but was removable, under the act of 1889, to the Railroad and Warehouse Commission of the state.

We think that no such interpretation was meant to be given to the act by the Legislature that passed the act. A survey of the occasion that gave birth to the act seems to us to be against such an interpretation. When the act was passed, the local authorities of Illinois had full power, as the governmental hand of the state, to regulate street railway crossings. There was, therefore, unless the wisdom of retaining that power in the municipal authorities was questioned, no occasion to confer it upon some other governmental hand; and it is not shown that the wisdom of continuing such power in the local authorities was even questioned. But to regulate the crossings of railways, outside of streets and highways, there was, until the act of 1889 was passed, no governmental hand. Any railroad already located could, at its own caprice, prevent a projected road from crossings its track, unless the projected road resorted to proceedings in eminent domain; and when such proceedings were resorted to, (the shoe thereupon being shifted to the other foot) the projected road could, at its caprice, cross where, and in the manner, it pleased, provided it was willing to pay such damages as such crossing entailed—a state of the law that left the interests of public life and safety wholly unprovided for.

The act of 1889 was meant to fill this hiatus. It created the Commission—an independent tribunal, that in the case of dispute, would leave it to the interest and caprice of neither railroad to determine where, or what, the crossing should be; but in the interest of the public, would prescribe the place and manner of the crossing. It fulfilled, in this respect, a clearly defined want—fulfilled it, too, in a way that did not interfere with railways responding to each other under the old principles governing eminent domain, or, with local authorities controlling their streets under the old principles of local rule. And this it seems to us must have been its purpose, its sole purpose, in that respect. Indeed to give to the act a wider scope would, we fear, be to substitute judicial legislation for interpretation.

The decree appealed from is reversed with instructions to dismiss the bill for want of equity.